W. R. CASE & SONS CUTLERY CO. v. FOLSOM. (No. 7211.)

(Court of Civil Appeals of Texas. Dallas. Nov. 21, 1914.)

1. CORPORATIONS (§ 376*) — POWERS — PURCHASE OF OWN STOCK.

A corporation, when not forbidden by statute and when acting in good faith and without objection from its stockholders or prejudice to creditors, may purchase shares of its own stock, regardless of the purpose for which it is bought.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1530; Dec. Dig. § 376.*]

2. APPEAL AND ERROR (§ 525*) — BILL OF EXCEPTIONS — INSTRUCTIONS.

Under Rev. St. 1911, § 1973, as amended by Acts 33d Leg. c. 59, § 3 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1973), giving parties the right to request special charges and have the giving or refusing of them reviewed, and providing that the trial court's action thereon may be reviewed only when such instructions shall be presented to the court and submitted to opposing counsel for examination and objection within a reasonable time after the court's charge is given to parties for examination, and in view of article 1971, relating to the general charge, and article 2061, relating to special charges, as amended by Acts 33d Leg. c. 59, § 3 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1971, 2061), requiring that all objections to the general charge or to specially requested charges shall be submitted to the trial judge before reading them to the jury, that he may correct them, and that, failing to do so, all objections to the general charge shall be waived, and the court's action on the special charges shall be approved, a bill of exceptions to the refusal of a specially requested charge indorsed by the signature of the trial judge under the word "refused" could not be considered, because not affirmatively showing that it had been presented to the court

and to opposing counsel within a reasonable time after the general charge was given to counsel for examination.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2376–2378; Dec. Dig. § 525.*]

3. APPEAL AND ERROR (§ 499*) — INSTRUCTIONS — NECESSITY OF OBJECTION.

An assignment of error to part of the court's general charge could not be considered, where the bill of exceptions did not show that appellant presented the objections relied upon to the trial judge before the charge complained of was read to the jury, since, under Rev. St. 1911, art. 1971, as amended by Acts 33d Leg. c. 59, § 3 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1971), all objections not so presented are waived.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2298; Dec. Dig. § 499.*]

4. TRIAL (§ 340*) — VERDICT — AMENDMENT.

Under Rev. St. 1911, art. 1980, authorizing the court to direct a verdict to be reformed at the bar if it is informal or defective, the trial court, after receiving a verdict for the plaintiff and after polling the jury and being informed that they had found against defendant on his cross-action, properly amended the verdict by inserting the words "and against the defendant on its counterclaim."

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 795–799; Dec. Dig. § 340.*]

5. APPEAL AND ERROR (§ 1060*) — MISCONDUCT OF COUNSEL — ARGUMENT TO JURY — HARMLESS ERROR.

In an action for the unpaid balance on defendant's own stock purchased from plaintiff, in which the defense was that the agreement, if any, to purchase the stock, was ultra vires and void, argument of plaintiff's counsel that "ultra vires is a dead issue in Texas," that it stinks to heaven, and is never resorted to except when a crooked corporation, such as the defendant, wanted to defeat honest debts, erroneous because ultra vires, in certain instances may be invoked as a just rule and misleading when asserted by counsel in the presence of jurors likely to be influenced thereby, was inflammatory, calculated to and probably arousing the prejudice of the jurors, and hence reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. § 1060.*]

6. EVIDENCE (§ 352*) — RECORDS OF CORPORATION.

In such action the records of the corporation in respect to any written authority of its president to purchase the stock from plaintiff were admissible to show that the authority was or was not given, but not as a conclusive circumstance on that issue.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1398–1403; Dec. Dig. § 352.*]

7. EVIDENCE (§ 508*) — OPINION EVIDENCE — POWERS OF CORPORATION.

In such case the opinion of counsel for defendant corporation, that it was without authority to purchase the stock, was inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2311; Dec. Dig. § 508.*]

Appeal from Dallas County Court; W. F Whitehurst, Judge.

Action by A. I. Folsom against the W. R. Case & Sons Cutlery Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

---

Seay & Seay, of Dallas, for appellant. Robertson & Sergeant and Meador & Davis, all of Dallas, for appellee.

RASBURY, J. Appellee sued appellant in the court below alleging that by the terms of several contracts he was employed by appellant, a foreign corporation, to sell its wares and merchandise, and that under said contract of employment appellant was due him $84 in expenses incurred on behalf of appellant. He alleged further that while in the employ of appellant he sold and delivered to appellant by written contract 30 shares of the capital stock of appellant's corporation at $50 per share, aggregating $1,500, on which there was due an unpaid balance of $868.-11. Upon these two items appellee secured verdict and judgment for $952.11, from which this appeal is prosecuted.

Appellant met the allegations of the petition: (1) By special exception, asserting that if it did agree to purchase said stock such agreement was void and unenforceable, because ultra vires; (2) by special answer alleging such agreement, if made on behalf of the corporation, was made by J. Russell Case, appellant's sales manager, who was without authority to make same and was acting without the apparent scope of his authority when such agreement was made; (3) denying the purchase or delivery of said stock or the payment of any amount of money thereon; (4) plea of ultra vires; and (5) cross-action for $336.21, alleged to have been paid to appellee in excess of any amount due him under his contract of employment.

We shall not attempt to recite the facts which the evidence of the respective parties tend to establish, since the issues presented by the record do not require it; but we will, in considering the several assignments, relate thereunder such facts as are supported by the evidence and necessary to an intelligent consideration of the issues.

[1] It is first urged that the court erred in overruling appellant's special exception, which admitted, for the purpose of the exception, the sale and purchase of the stock, but asserting the same to be void because ultra vires. It is sufficient to say, in reference to the proposition of law raised by the exception that corporations may, when not forbidden by statute, if acting in good faith, in the absence of objections from its stockholders and without prejudice to creditors, purchase shares of its stock, regardless of the purpose for which it is bought. Howe Grain & Mercantile Co. v. Jones, 21 Tex. Civ. App. 198, 51 S. W. 24; San Antonio Hdw. Co. v. Sanger, 151 S. W. 1104. In view of the full discussion and the exhaustive citation of authorities in the cases cited, further discussion of the reasons for rule is unnecessary.

[2] The second assignment of error complains of the refusal of the court below to peremptorily instruct verdict for appellant as to the item for balance due on purchase of stock, on the ground that appellee failed to introduce testimony showing that appellant was solvent or that the purchase of the stock by appellant would not prejudice the right of its general creditors. Consideration of the issue raised by said assignment must be declined for the reason that the record fails to show a compliance with the statutory rule by which the action of the court in refusing the charge may be reviewed. Article 1973, R. S., 1911, governing the giving and refusing of special charges, was amended at the regular session of the thirty-third Legislature, and the method of bringing such proceedings into review before this court radically changed. Gen. Laws, Reg. Sess., 33d Leg., pp. 113, 114. To the provisions of original articles, familiar to bench and bar, which confer upon litigants the right to request special charges and have the giving or refusing of the same reviewed, the Legislature has added by amendment the further provision that the action of the trial court in the respect stated may now be reviewed only when "such instructions shall be prepared and presented to the court and submitted to opposing counsel for examination and objection within a reasonable time after the charge is given to the parties or their attorneys for examination." The only indorsement upon the special charge, the refusal to give which is sought to be reviewed, other than the clerk's file mark, is the signature of the trial judge under the word "refused." The bill of exceptions preserving the point contains no more than the charge. As a consequence the record fails to disclose whether the said special charge was "prepared and presented to the court and submitted to opposing counsel for examination within a reasonable time after the (general) charge was given to the parties or their attorneys for examination." The necessity and importance of showing such facts affirmatively by the bill is obvious from an inspection of article 1971, relating to the court's general charge, and article 2061, relating to the giving or refusing of special charges, both amended at the same time that article 1973 was amended. By the two articles it is contemplated clearly that all attacks upon the charge to be given to the jury, whether by the general charge or by specially requested charge, shall be submitted to the trial judge in advance of reading same to the jury in order that he may add to or correct same, if erroneous. Failing to do so, "all objections not so made and presented shall be considered as waived," as related to the general charge; and, as relates to the giving or refusing of special charges, the court's action "shall be regarded as approved, unless excepted to" in the manner stated. The amendments provide no less than that, and a repetition of the fact in our own language could neither add to nor detract from their force. Otherwise, how may it be said from the record that the trial court was given opportunity to correct his

charge or give the requested one if it should have been given.

[3] The third assignment of error complains of that portion of the court's general charge which instructs the jury that "the burden of proof is upon the defendant to establish its defense by a preponderance of the testimony." Without reference to the merits of the issue thus raised, we must decline also to consider said assignment, for the reason that the bill of exception bringing into review the action complained of fails to show that appellant presented the objections here made to the trial judge before the charge complained of was read to the jury, since all such objections are waived when not presented as indicated. Article 1971, R. S., as amended Gen. Laws, Reg. Sess., 33d Leg., p. 113.

[4] The fourth assignment of error complains of the action of the court in amending or correcting the verdict of the jury. By cross-action appellant sought to recover of appellee $301.32, the amount claimed to have been paid appellee in excess of the amount really due him. After considering the case, the jury returned into open court a verdict reciting, "We, the jury, find for the plaintiff in the sum sued for, $952.11." Thereupon the court polled the jury and asked if they found against defendant on its cross-action, and the jury nodded their heads and said "they did." Whereupon the court inserted in the verdict, "and against the defendant on its counterclaim." We conclude the court was authorized to poll the jury and correct the defective verdict under article 1980, R. S. 1911, and the various decisions construing same. Malcolm v. Sims-Thompson Motor Car Co., 164 S. W. 924.

[5] The fifth assignment of error, to which appellee makes no reply, relates to alleged misconduct of counsel for appellee by the use of inflammatory language in argument to the jury, not supported by the evidence, and of a nature calculated to arouse against appellant the prejudice and passion of the jury. As we have related at another place in this opinion, appellant in its answers by exception and by plea urged that, if it did agree to purchase its own stock from appellee, the agreement was void and unenforceable, because ultra vires. The exception raising the defense of ultra vires was overruled, and no further reliance placed thereon, or reference made thereto by appellant. After the other issues in the case had been developed, both by appellee and appellant, the same were presented to the jury on the facts for the jury's solution. Counsel for appellee in their presentation of appellee's case used the following language:

"Ultra vires is a dead issue in Texas. You never hear of ultra vires until there is a case like the one in question. Ultra vires stinks to heaven when a crooked corporation tries to beat its honest debts. So dishonest and crooked is this corporation that they won't hand Folsom his stock back. J. Russell Case parts his hair in the middle and runs their business.

Ultra vires means I have got authority to defraud the public. When you plead ultra vires, the jury will say you are crooked. J. Russell Case went to Hot Springs and busted up this car, and Folsom refused to take it. The Pennsylvania statutes and laws say that a corporation can purchase its own stock. Why didn't they take the testimony of J. Russell Case? He is the only man who knows anything about the transaction. They didn't take the testimony of J. Russell Case, but took the testimony of every one else connected with the business."

The charges contained in the quoted language relating to the "crookedness" of appellant was without support in the evidence, so far as the record discloses inflammatory, calculated to and probably did arouse the passion and prejudice of the jurors. To say that ultra vires in Texas is a dead issue, stinks to heaven, and is never resorted to except when a crooked corporation, such as appellant was alleged to be, desires to defeat its honest debts, is both erroneous and misleading. Erroneous because ultra vires is a rule of law that corporations may invoke in certain instances, and in those instances it is a just rule. Misleading because when asserted to be a dishonest defense by a member of the legal profession to and in the presence of jurors, such assertion obviously carries force and influence with those not familiar with such matters. Much more could be said concerning the further statement by counsel that appellant would not even hand appellee back his stock, and was in effect to be censured for not taking the deposition of J. Russell Case, through whom appellee sold his stock to the corporation, but whose agency in that behalf appellant denied, but we believe that what we have already said is sufficient to show the evident harm that lurks in such remarks and the futility of attempting to measure the extent thereof. The following cases cited by appellant from among the many rendered on this troublesome question discuss the rule and the reasons upon which it is founded: Miller v. Burgess, 136 S. W. 1174; Metropolitan Street Ry. Co. v. Roberts, 142 S. W. 45; M., K. & T. Ry. Co. v. Cherry, 44 Tex. Civ. App. 232, 97 S. W. 715; G. H. & S. A. Ry. Co. v. Washington, 42 Tex. Civ. App. 380, 92 S. W. 1054. The assignment will be sustained.

[6, 7] In reference to the sixth assignment of error, which complains of the refusal of the court to permit appellant's president to testify what the records of the corporation disclosed concerning any written authority of J. Russell Case to purchase the stock of appellee, we are of opinion that such testimony was admissible either to show that the authority was or was not given, but not as a conclusive circumstance on that issue. We do not think the opinion of counsel for appellant corporation that the corporation was without authority to purchase the stock was admissible, however.

For the reasons indicated, the judgment is reversed and the cause remanded for another trial not inconsistent with the views here expressed.